## Commonwealth *v.* Blieden, Appellant.

*Criminal law—Professional thieves—Summary conviction—Magistrate's docket—Continuance of case—Act of June 7, 1901, P. L. 492.*

1. While the Act of June 7, 1901, P. L. 492, relating to professional thieves contemplates a summary conviction, there is no reason why a magistrate may not adjourn a hearing of persons charged with violating the act for further evidence as to whether the defendants were in reality pickpockets, and whether the place and circumstances in which they were arrested were within the inhibition of the statute. The fact that there was a continuance for ten days does not authorize the court of quarter sessions, on a motion to quash the indictment for alleged perjury of the bondsman, to examine and act upon the record of the magistrate before the latter has reached a determination and completed his docket.

*Criminal law—Magistrates—Perjury—Jurisdiction of magistrate—Assignment of magistrates in Philadelphia.*

2. Where a magistrate has been duly elected and commissioned a magistrate of the city of Philadelphia, and has been assigned to sit at the central station, his competency to hear at the central station persons charged with being professional thieves under the Act of June 7, 1901, P. L. 492, cannot be questioned by a bondsman of the defendant's seeking to quash an indictment against himself for perjury upon a justification of bail for the appearance of the defendants at a further hearing. The question of the authority of the magistrate to sit can only be raised by quo warranto at the suit of the commonwealth.

Submitted Nov. 26, 1912. Appeal, No. 151, Oct. T., 1912, by defendant, from judgment of Q. S. Phila. Co., February Sessions, 1912, on verdict of guilty in case of Commonwealth v. Samuel Blieden. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Indictment for perjury. Before AUDENRIED, J.

The jury returned a verdict of guilty, upon which judgment of sentence was passed.

SULZBERGER, P. J., on a motion to quash the indictment filed the following opinion:

This is a motion to quash an indictment found against Samuel Blieden, the defendant, for perjury, in willfully, corruptly and falsely swearing to certain facts relating to his competency as security in a prosecution against one Gray and one Howard. There is no defect in the form of the indictment, and it is conceded that the defendant committed the acts upon which the grand jury found the indictment. The substantive ground relied upon by the defendant is that the proceeding wherein he offended was not judicial, and that therefore his act, however reprehensible in point of morals, did not in law constitute the crime of perjury. The theory upon which the defendant hopes to make good his contention is rather complicated and involved. It appears that Gray and Howard, known to the police as pickpockets, were arrested upon a crowded

car. They were brought before Magistrate MacFarland at the Central Station, the charge against them being a violation of the Act of June 7, 1901, P. L. 492, which forbids pickpockets from being in a crowd, under a penalty of imprisonment not exceeding ninety days. The magistrate could have heard the case and could have convicted them of this offense against the act of 1901. The commonwealth, however, desired time to investigate whether in point of fact somebody's pocket had been picked, evidently believing that an opportunity so favorable for purloining property from the person had not been neglected by Gray and Howard. The magistrate, in order to give time for the inquiry, held the defendants in $1,000 bail for a further hearing on the tenth day thereafter. The defendant, Blieden, entered the bail, and thereupon the alleged pickpockets fled the jurisdiction and the bail was forfeited, with the result that Blieden was found to be worthless.

The contention now is that Magistrate MacFarland's docket is defective in that it discloses no charge of a criminal offense against Gray and Howard, and that, even if it did, they could not be held because MacFarland had no legal title to sit in that magistrate's court at that time. From these premises the reasoning is that when the magistrate held Gray and Howard the proceeding was a mere nullity, and that therefore Blieden's perjury was not an offense against law.

Every stage of the proceeding is challenged. It is contended that the magistrate had no right, under the circumstances, to hold the defendants in the proceedings before him to bail for a further hearing on the mere suspicion of larceny. This contention, however, is scarcely a fair statement of the facts. There was evidence before the magistrate of the substantive offense of having violated the act of 1901, whereby the defendants had incurred the penalty denounced by that statute, which, it may be said in passing, is in conformity with law which in Pennsylvania is ancient: Byers and Davis v. Com., 42

Pa. 89. While the act of 1901 contemplates a summary conviction, we know of no reason why a magistrate may not adjourn the hearing for further evidence on either of the questions, namely, whether the defendants were in reality pickpockets, and, also, whether the place and circumstances in which they were arrested were within the inhibition of the statute. In that view of the case the action of the magistrate was in favor of the liberty of the defendants, and it scarcely lies in their mouths to object to it as violative of their rights.

It is contended, however, that the memorandum made by the magistrate on his docket charged no offense at all. The words are, "defendants charged with suspicion pickpockets." There are two reasons why this objection cannot be sustained. It may be conceded that the expression used by the magistrate is not technical or accurate. Nevertheless, it is a sufficient indication of the situation actually before him. The defendants were identified as pickpockets; they were arrested in a crowd on the platform of a car, and they were suspected of actually having picked pockets. The commonwealth had ample evidence at hand tending to show all these facts except the actual picking of pockets. Under the circumstances, the magistrate, instead of ending the matter at once by a summary conviction of the defendants for the minor offense, permitted an investigation as to whether the major offense had also been committed, in the meanwhile favoring the defendants by discharging them on bail. This in no manner violated any right of the defendants, and, therefore, the objection on that ground cannot be sustained.

As regards the form of the magistrate's record, it is not in a condition to be reviewed by us because it is not complete. The mere fact that the hearing was held over for more than one day does not authorize the reviewing court to examine and act upon the record before the magistrate has reached a determination and completed the docket. Though a docket is not, strictly speaking, a

record, yet we have in Pennsylvania conferred upon it some essential qualities of a true record. We may, for instance, review it on certiorari proceedings. It cannot, however, be successfully contended that certiorari lies while the proceedings are pending, since a record in a judicial proceeding is a precise statement of the suit from its commencement to its termination: Bouvier's Dict., s. v. Record. The docket entries in this case were legally incomplete, and the presumption of law is that the magistrate will proceed with the case in due course and keep a true record of his proceedings. Until the case is decided by him it is beyond our province to criticise his docket: 21 Pa. Dist. Rep. 488.*

It is the defendant, Blieden, himself who prevented the completion of the docket by his fraudulent act in giving worthless bail which procured the enlargement of the alleged criminals and enabled them to flee the jurisdiction. His affidavit of competency was relevant and material, and its willful falsity constitutes perjury.

The defendant, however, relies on still another point. While not denying the jurisdiction of the magistrate's court as such, he denies the authority of Magistrate MACFARLAND to hold that court. It is admitted that Magistrate MACFARLAND was duly elected and commissioned a magistrate of the city of Philadelphia, and as such had full jurisdiction of such cases. It is denied, however, that he was the proper incumbent of the seat at the Central Station. It is difficult to see how an accused criminal can suddenly assume the role of attorney-general and question the right of a state officer to act according to his commission. If it were true that MAC-FARLAND was usurping the place that properly belonged to another, the person deprived of that place would naturally be expected to contest his right in a proper proceeding. When, however, neither the person deprived, nor the state, nor the city, questions MACFARLAND's right, it ought not to lie in the power of a man accused of crime to assume their function and use a motion to

quash as a quo warranto to determine the magistrate's position. A quo warranto is a government writ, and its object is to ascertain the correctness of governmental administration. The powers that issue it are, in the main, the government itself, though it is sometimes granted to the person whose office is usurped by another. There is no principle of law which enables a criminal, who may even be an alien, to interfere with our internal administration and to ascertain collaterally, by a motion to quash, whether A or B is the lawful sitting magistrate. The question concerns the commonwealth, but in no manner concerns the defendant. His right, which no man may deny, is to receive justice according to law, and any mistake of the court, whereby he is injured in that respect, whether made by a magistrate de jure or a magistrate de facto, entitles him to his legal remedy, which is, to have the mistake corrected. Beyond that he may not go. The mere fact that he was arrested for a crime cannot confer upon him the duty of minute criticism upon the mode of internal administration of our government, nor does it enable him to suspend or nullify the sovereign functions of the state by conducting proceedings to make void the acts of judicial officers whose title to their office may be defective. While they are acting under color of legal authority and are recognized by the constituted authorities, they may administer their functions free from challenge by the collateral motions of a person accused of crime. The authorities are at one on this point.

"If an officer is eligible, and he has taken such oaths as he is supposed to be required, he may be deemed an officer de jure as well as de facto, until a regular proceeding and judgment declaring his office vacant:" Morgan v. Vance, 4 Bush (Ky.), 323.

"One ineligible to a judgeship, who nevertheless exercises the functions of the office, may be judge de facto:" Ostrander v. People, 29 Hun (N. Y.), 513; Gregg Township v. Jamison, 55 Pa. 468.

"A judge de facto as against all parties but the com-

monwealth, is a judge de jure, and having at least a colorable title to his office, his title thereto cannot be questioned in any other form than by quo warranto at the suit of the commonwealth.

The right of a president judge to exercise his functions within a county attached by the legislature to his district subsequent to his election, cannot be questioned collaterally.

The court will judicially take notice of the legislation by which he claims to exercise his office, so far as to hold him a judge de facto, and as against all but the commonwealth, a judge de jure.

The rights and powers of a judge de facto, with color of title, can only be inquired into by quo warranto at the suit of the commonwealth: Com. v. Burrell, 7 Pa. 34; Clark v. Com., 29 Pa. 129; Campbell v. Com., 96 Pa. 344.

The objection to Magistrate MacFarland's competency to sit in a magistrate's court cannot be sustained. For these several reasons the motion to quash the indictment is overruled.

*Error assigned* among others was in overruling motion to quash the indictment.

*William A. Gray,* for appellant.

*John H. Maurer,* assistant district attorney, *Joseph H. Taulane,* assistant district attorney, and *Samuel P. Rotan,* district attorney, for appellee.

Per Curiam, December 18, 1912:

This case was submitted to the jury under a clear, adequate and impartial charge, and the verdict was fully warranted by the law and the evidence, unless it be true, as contended by appellant's counsel, that the proceeding in which the alleged perjury was committed was not a judicial proceeding. The immediate proceeding, in which the oath was taken and the alleged false statement was

made, was the entry of bail by the defendant before Magistrate MORRIS for the appearance of two persons before Magistrate McFARLAND at a certain time for further hearing, these persons having been committed to jail for such further hearing before him, and the alleged false statement was given by the defendant in justifying as bail. As the result of the proceeding before Magistrate MORRIS the defendant was accepted as bail and the two persons were released from custody, and, it is stated, fled the jurisdiction. No question is raised as to the general authority or qualifications of Magistrate MORRIS to entertain a proceeding of this nature, and to administer the oath to the person offering to become bail; nor is there ground for questioning the materiality of the testimony of such person as to his qualification. But it is contended that the proceeding before Magistrate McFARLAND must be deemed the proceeding in which the bail was entered and the oath was taken, and that this was not a judicial proceeding because Magistrate McFARLAND had no authority to act in the premises. It is not disputed, however, that he was a duly elected and qualified magistrate of the city and county of Philadelphia, having jurisdiction of the class of cases to which that pending before him belonged, and that when the preliminary hearing of the two persons was had before him, and when he committed them for further hearing, he was sitting as a committing magistrate at the central police station by virtue of his having been appointed to do so by the mayor. That under the laws applicable to the city, one of the magistrates may be appointed to sit as a committing magistrate at that station, is undisputed. But whether the selection of the person is to be made by the mayor or by the magistrates is a controverted matter. A good deal can be said upon both sides of that question, as is shown by the able briefs of counsel for the defendant and for the commonwealth. It is unnecessary, however, for us to express an opinion upon that question. It is sufficient for present purposes that it appears that Magistrate

McFARLAND was a duly elected and qualified magistrate of the city and county of Philadelphia, and that the case pending before him was of a class coming within the jurisdiction of magistrates of the city, and that he was sitting as a committing magistrate at the central police station by virtue of an appointment by the mayor. He was not an intruder in or usurper of that position, and, so far as appears, neither the commonwealth nor the mayor, nor any other magistrate of the city, was contesting his right to sit. Whatever may be said upon the question mooted by counsel, it is quite clear that his 'acts in the present case have the force and validity of acts of an officer de facto acting by color of title. This view is fully sustained by the authorities cited in the brief of the district attorney, and is elaborated and shown quite conclusively to be the correct view by the learned judge who wrote the opinion overruling the motion to quash the indictment. In view of his full discussion of the question, it is unnecessary for us to add anything further except to say that we fully concur in the conclusion there reached. His opinion also is a sufficient and correct answer to the objection that the proceeding before Magistrate McFARLAND was not in its nature a criminal proceeding which authorized him to commit the two persons for further hearing.

The assignments of error are overruled, the judgment is affirmed, and the record is remitted to the court of quarter sessions of Philadelphia county with direction that it be fully carried into effect, and to that end it is ordered that the defendant forthwith appear in that court, and that he be committed by that court to serve such part of the term of imprisonment imposed by the sentence as had not been served at the time this appeal was made a supersedeas.